**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JAMES GUMBERT,**<br>**an individual,**<br><br>**PLAINTIFF,**<br>**v.**<br><br>**PHAN BROTHERS INC,**<br>**a domestic corporation,**<br><br>**DEFENDANT.** | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | **Case No. 1:22-cv-00722-LY** |

**RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, James Gumbert, submits that Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be denied for the following reasons:

1. Plaintiff, James Gumbert, is an individual with disabilities as defined by the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), and its implementing regulations, the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").[1]
2. James Gumbert "routinely stops to patronize various gas stations, convenience stores, and retail stores along his routine route of travel around his home to purchase gasoline, use the bathroom, purchase convenience items, and also purchase general goods and services of the same type that would be purchased by any other person in their daily life."[2]
3. James Gumbert's "patronage of various businesses around his home is central to his daily life, like it would be for any other non-disabled person in their daily life."[3]

[1] See ECF Document 13, First Amended Complaint, Paragraphs 4-6.
[2] Id.; See Allegation 11.
[3] Id.; See Allegation 12.

4. James Gumbert intends to continue patronizing places of public accommodation in the general vicinity of his home, as part of his daily life, just like every person in this country has the right to do.[4]

5. James Gumbert resides within ***thirty (30) miles*** of the Defendant's property at 1900 E Oltorf St, Ste 100-101, Austin, TX 78741 ("Subject Property") that is not compliant with the ADA,[5] and because the Subject Property is located on Oltorft St, a Travis County thoroughfare that he frequents routinely, he is routinely where the Subject Property is located and travels in and about the immediate area of the Subject Property numerous times every month, if not every week.[6]

6. James Gumbert visited Defendant's business on multiple occasions only to encounter physical barriers which have prevented him from the "full and equal enjoyment of the…services, facilities…or accommodations of any place of public accommodation" as able-bodied persons. In his Complaint, James Gumbert has specifically alleged numerous violations of the ADA that he encountered on his previous visits to the Subject Property.[7]

7. During these visits, James Gumbert suffered a personal, concrete injury in fact when he was denied the ability to exercise his basic right of "full and equal enjoyment" of the Subject Property's public services, facilities, and accommodations due to the Defendant's failure to comply with ADA regulations and standards.[8]

8. James Gumbert's daily life "has been negatively affected by the barriers to entry at the Subject Property, as his fundamental right to patronize any place of public accommodation

---

[4] Id.; See Allegations 13 – 16.
[5] Id.; See Allegation 31.
[6] Id.; See Allegation 10.
[7] Id.; See Allegations 17, 29 and 31.
[8] Id.; See Allegations 29 and 31.

at his choosing has been diminished by Defendant's non-compliance with the ADA." [9]

9. Furthermore, James Gumbert intends to revisit the Subject Property again in the next six months to use the bathroom and purchase general goods and services of the same type that would be purchased by any other person in their daily life and once again attempt to exercise his basic rights granted under the ADA.[10]

10. Defendant cannot rely on Laufer v. Mann Hospitality[11] or Strojnik v. Teof Hotel GP, LLC,[12] because they are factually and legally inapplicable. As shown below, James Gumbert has standing to bring this action.

## ARGUMENT

### I. This Court has subject matter jurisdiction because James Gumbert has adequately alleged a plausible set of facts that give rise to his cause of action under the ADA.

For a claim to survive a motion to dismiss, all that is required "is to allege a plausible set of facts establishing jurisdiction."[13] When determining whether a plausible set of facts establishes jurisdiction, the Court must "consider the allegations in the plaintiff's complaint as true." [14]

James Gumbert has alleged a plausible set of facts to survive a motion to dismiss at this stage of litigation. To plead a valid claim which would survive a motion to dismiss, the allegations must pass the two-factor test established in *Twombly* and later clarified in *Iqbal.*[15] In *Twombly*, the Supreme Court established that a valid pleading must (1) be "plausible on its face," and (2)

---

[9] Id.; See Allegation 19.
[10] Id.; See Allegations 11, 13 and 15 – 17.
[11] Laufer v. Mann Hospitality, L. L.C., 996 F.3d 269 (5th Cir. 2021).
[12] Strojnik v. Teof Hotel GP, 2020 WL 5211063 (N.D. Tex. Aug. 31, 2020)
[13] Laufer v. Mann Hospitality, L. L.C., 996 F.3d 269 (5th Cir. 2021); citing Physician Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).
[14] Id.; citing to St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency, 556 F.3d 307, 315 (5th Cir. 2009) (citations omitted).
[15] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544 (2007); see also Ashcroft v. Iqbal - 556 U.S. 662, 129 S. Ct. 1937 (2009).

have sufficient specificity "to raise a right to relief above the speculative level."[16] To survive the plausibility factor, a plaintiff must allege facts that raise more than a mere possibility of occurrence.[17] A claim will satisfy this factor if the pleadings allow the court to draw reasonable inference that the defendant is liable for the misconduct which resulted in injury.[18]

First, Defendant makes the argument that James Gumbert's allegation that he "visited or attempted to patronize" does not meet the plausibility standard without providing any basis. This is not correct. James Gumbert (actually) alleged that he "was a customer at the (Subject Property)".[19] Either way, Defendant's conclusory allegation is without any legal basis, and in fact, Defendant provides no valid support for it. Nevertheless, attached as Exhibit A, is a copy of the receipt received by James Gumbert during his visit to a business he patronized at the Subject Property and a photo of same.

James Gumbert pled that he was denied rights granted to him under the ADA when he visited and attempted to utilize the facilities at the Subject Property on multiple occasions. Further, James Gumbert lives within 30 miles of the Subject Property. Despite his disability, James Gumbert is not confined to his home and travels throughout the local area regularly. [20] To argue that it is not plausible for a local resident to stop at any given gas station, convenient store, or local business within a short distance of his home is specious at best. Defendant would have this Court believe that the ADA forces disabled people to only patronize places of public accommodation that are already ADA-compliant and imposes a burden on the disabled to canvas around their home and places they travel frequently performing this research on their own and in advance. This is

[16] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544 (2007).
[17] Id.
[18] Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).
[19] See ECF Document 13, First Amended Complaint, Allegation 8.
[20] See ECF Document 13, First Amended Complaint, Allegation 10.

untrue and unworkable. Every American citizen (including disabled people) has the right to patronize any place of public accommodation of their choosing, with or without foreknowledge. In our everyday lives we often patronize places of public accommodation that are unscheduled and unplanned to use the bathroom, purchase allergy or anti-diarrhea medicine, buy a bottle of water or an ice cream cone, etc. Any interpretation of the ADA that requires the disabled (a protected class well-known for not being able to get around easily) to canvas the entire city/county mapping all places of public accommodation for ADA-compliance in advance of any possible travel is against the very spirit of why the ADA became law and is “misguided”, to say it lightly.

If a patron does not have the ability to sue a business he patronizes when the business is not in compliance with the ADA, what is the purpose of the Act? Using Defendant's logic, it is difficult to envision any instance in which a disabled individual who is affected by a non-compliant property can enforce his rights - this is clearly not the intent of the ADA.

Secondly, James Gumbert has pled with sufficient specificity claims which raise the right to relief beyond a speculative level. In his Complaint, James Gumbert has pled that Defendant’s failure to maintain its premises in compliance with ADA regulations and standards has led to his inability to exercise his rights granted under federal law. James Gumbert has listed specific physical barriers he encountered when he attempted to utilize the facilities at the Subject Property which are in violation of the ADA.[21] For example, James Gumbert stated there is no van accessible parking at all, no visible upright signage for one of the parking spaces present, and a curb ramp extending into and taking up most of the access aisle making it dangerous for James Gumbert to utilize the parking facility.[22] Also, James Gumbert stated the ramp handrail along the route to each business has no edge protection or sides to protect wheelchair users against having their wheelchair

[21] Id.; see Allegation 31.
[22] Id.; see Allegation 31(a)-(b) and (d).

casters slip off the edge of the ramp surface making it dangerous for James Gumbert to utilize the parking facility.[23]  In addition, James Gumbert stated he was unable to traverse the path of travel from the parking area to the entry doors because the ramp lacks a level top landing area.[24]

Thus, James Gumbert has satisfied the pleading standard set forth by the Supreme Court. As a result, the Court does have subject matter jurisdiction over the case and Defendant's Motion to Dismiss should be denied on those grounds.

## II.    James Gumbert has standing to bring this claim under the ADA.

James Gumbert has standing to bring this claim under the ADA. Standing requires a plaintiff demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[25]

First, James Gumbert suffered a concrete injury in fact when he was unable to safely utilize the accommodations and facilities at the Subject Property due to the numerous physical barriers he encountered during his visits.[26] James Gumbert has a right to "the full and equal enjoyment of the…services, facilities…or accommodations of any place of public accommodation," irrespective of disability, granted to him by the ADA.[27]

Next, the injury in fact is fairly traceable to the conduct of Defendant as the ongoing injury suffered by James Gumbert is a result of Defendant's failure to maintain the premises in compliance with ADA regulations and standards.[28] Defendant is the owner/lessor/ and/or property

---

[23] Id.; see Allegation 31(f)-(g).
[24] Id.; see Allegation 31(h).
[25] Spokeo, Inc. v. Robins, U.S. 136 S. Ct. 1540 1547, 194 L.Ed.2d 635 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ), as revised (May 24, 2016).
[26] See ECF Document 13, First Amended Complaint, Allegations 14, 17, 19, 21 and 27.
[27] 42 U.S. Code § 12182 (a) – Prohibition against discrimination by public accommodations.
[28] See ECF Document 13, First Amended Complaint, Allegations 29 – 30 and 33.

manager of the Subject Property and its accompanying facilities.[29] Defendant's failure to maintain the premises in compliance with ADA regulations and standards have resulted in physical barriers being present which prevent James Gumbert from the full and equal enjoyment of its facilities.

Finally, the injury suffered by James Gumbert is likely to be redressed by a favorable judicial decision, because it would force Defendant to remove the physical barriers currently preventing James Gumbert from safely utilizing the facility. Removal of the physical barriers at the Subject Property would allow James Gumbert and other similarly situated disabled persons the ability to freely exercise their rights granted under federal law.

Ultimately, James Gumbert has validly pled the elements necessary for standing under the ADA as he has detailed (1) that he has suffered an injury in fact, (2) that the injury in fact is fairly traceable to the conduct of Defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. As such, Defendant's Motion to Dismiss should be denied on those grounds.

Defendant states that James Gumbert "claims his purpose is *to be a regular patron*"; has only a "generalized interest in 'becoming a patron'"; and "no personal interest in either parking or going into any store"; thus falsely concluding James Gumbert has no personal interest that gives rise to Article III standing. This statement completely ignores that James Gumbert pled specifically that he suffered a personal, concrete injury in fact when he when he ***actually visited the Subject Property as a customer/patron*** and was unable to safely utilize the accommodations and facilities at the Subject Property due to the numerous physical barriers he encountered during his visits.[30] In fact, James Gumbert was a customer at a Subway restaurant located at the Subject Property in

[29] See ECF Document 13, First Amended Complaint, Allegation 9.

[30] See ECF Document 13, First Amended Complaint, Allegations 14, 17, 19, 21 and 27.

March 2022 and the receipt from that visit showing the date and the address of the Subway restaurant along with a photo, can be seen in Exhibit 1 hereto.

Despite James Gumbert's very specific, personal, concrete injury in fact that he was unable to safely utilize the accommodations and facilities at the Subject Property which results from the numerous and very detailed list of violations at the Subject Property; Defendant makes numerous, conclusory allegations that James Gumbert's concrete injury in fact is "dubious", "reprehensible", "vexatious", "cookie-cutter", "boilerplate", and "entrepreneurial"; but not once in his 19-page Motion to Dismiss (not even once) did Defendant deny that the violations exist or provide any evidence to demonstrate they were false.

It is worth noting that Defendant has been on notice of the violations for almost three (3) months and has not once pled to have made any repair (not even once) – a clear indicator that he will continue to "thumb his nose" at the ADA and has no intention of becoming ADA-complaint, without court intervention.

Defendant states that James Gumbert has not adequately alleged that the remediation to the barriers to entry present at the property is readily achievable. However, James Gumbert has alleged that remediation of the barriers could be accomplished without significant difficulty or expense.[31] James Gumbert went on to explain that "removal of the physical barriers and dangerous conditions present at the Subject Property is readily achievable because of the site conditions at the Subject Property, the structural design of the subject facility, and the straightforward nature of the necessary modifications."[32] Further, James Gumbert stated that this removal is readily achievable because of the relative low cost of the necessary modifications and the Defendant has the financial

[31] See ECF Document 13, First Amended Complaint, Allegations 36 – 37.

[32] See ECF Document 13, First Amended Complaint, Allegation 38.

resources to make the modifications, including the financial assistance made available to Defendant by the government pursuant to Section 44 and/or Section 190 of the IRS Code.[33]

At this stage of litigation, all of James Gumbert's factual allegations must be taken as true. Prior to discovery being conducted in this matter, it would be impossible for James Gumbert to contemplate a specific remedy for each alleged barrier to entry and calculate a precise cost. Such a requirement would necessitate James Gumbert to retain an expert prior to filing suit to determine a specific repair needed for each violation, which would create an undue financial burden for James Gumbert and serve as a de facto nullification of the Americans with Disabilities Act for all disabled persons not fortunate enough to have significant financial resources – only the wealthy disabled could enforce their rights.

In attempting to create a new pleading burden for James Gumbert, Defendant cites to Lopez v. Catalina Channel Express, Inc., a case out of the Ninth Circuit that adopts a burden-shifting framework for analyzing claims involving the removal of ***pre-ADA barriers*** as to "readily achievable" and requires a cost estimate and value for the benefit of compliance - a pleading burden that does not exist in the Fifth Circuit and would require plaintiffs to conduct discovery prior to filing suit and quantify the dollar value of an intangible - an impossible burden.[34] Also, as James Gumbert has pled that "accessible elements at the Subject Property have been altered and/or constructed since 2010" (a factual allegation that must be taken as true), the burden-shifting framework the Ninth Circuit adopts in Lopez would not even apply because the James Gumbert does not complain of a pre-ADA barrier. In fact, the plaintiff's burden of "readily achievable" does not even apply to newly constructed or altered elements, instead requiring defendant to prove it

---

[33] See ECF Document 13, First Amended Complaint, Allegations 39 - 40.

[34] Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020).

was not technically feasible to comply with the 2010 standards.[35]

Defendant also points to George Persyn and ADAPT of San Antonio, Inc. v. Daniel Torres, et al.[36], a results-based decision where the magistrate judge (after noting the building was built in 1925) made several Report and Recommendations that included:

1) denying Persyn's request to proceed in forma pauperis,

2) recommending dismissal because ADAPT of San Antonio had no attorney,

3) recommending dismissal because Persyn failed to show that the Defendant owned the property,

4) recommending dismissal because Persyn failed to identify the barrier preventing him from entering the property,

5) recommending dismissal because Persyn suggested a repair that would itself not be ADA-complaint,

6) recommending dismissal because Persyn failed to plead when the facility was designed, constructed, or modified, and

7) imposing an impossible pleading burden that required the plaintiff to know and plead:

a) the cost of the repair,

b) the financial resources of the Subject Property,

c) the financial resources of the Defendant, and

d) the type of operations of the Defendant.[37]

There is simply no possible way for any plaintiff to know or discover this information about any defendant before the discovery process has begun. To place a burden on a plaintiff to plead this information in the initial filing is, again, a de facto nullification of the Americans with

[35] See generally 28 CFR § 36.304 and 28 CFR § 36.406(a)(5).

[36] Persyn et al. v. Torres et al., No. SA-11-CV-0141 FB, 2011 WL 1549203, 2011 U.S. Dist. LEXIS 43828 (W.D. Tex. Apr. 22, 2011).

[37] Id.; see generally ECF Document 8, Report and Recommendation.

Disabilities Act, at least in any situation where said plaintiff is unwilling to commit corporate espionage.

After noting that the magistrate's recommendations were not objected to by the plaintiff, the District Judge in Persyn ended up accepting (in part) and rejecting (in part) the magistrate's recommendations – specifically, accepting that while a plaintiff must plead that removal of a barrier is readily achievable (presumably because the building was built in 1925) – but notably rejecting the need for a plaintiff to plead all the factors recommended by the magistrate.[38]

**III. James Gumbert has alleged imminent future injury that supports injunctive relief, and further the Strojnik case is factually and legally inapplicable to the case at bar.**

James Gumbert agrees with Defendant that for cases brought under Title III of the ADA a plaintiff must show an imminent future injury that will be avoided if injunctive relief is granted because injunctive relief is the only relief available to a Title III plaintiff. This requires that the anticipated injury be an injury in fact and that it be imminent. James Gumbert has alleged that he has visited the Subject Property on March of 2022 prior to filing the initial complaint.[39] James Gumbert further alleges he is in the vicinity of the Subject Property numerous times every month, if not every week.[40] Further, James Gumbert makes the claim that he intends on revisiting the Subject property within six months of the filing of his Complaint or sooner, as soon as the barriers to access detailed in the Complaint are removed; the purpose of the revisit is to be a regular patron and to determine if and when the Subject Property is made accessible.[41] James Gumbert intends

[38] Id.; see generally ECF Document 12, Order Accepting Report and Recommendation of the United States Magistrate Judge.
[39] See ECF Document 13, First Amended Complaint, Allegation 8.
[40] Id.; See Allegation 10.
[41] Id.; See Allegation 15.

to continue patronizing places of public accommodation in the general vicinity of his home, as every person in this country has the right to do.[42]

As previously stated, all allegations of the Complaint are to be read as true for purposes of determining the merit of a Motion to Dismiss. The Court must accept James Gumbert's allegation as true that he will return to the property as a regular patron and to determine if the violations at the property have been remedied. This is not a "someday" allegation as it is characterized by Defendant.[43] James Gumbert has given a time frame (six months) in which he plans to return to the Subject Property, and sooner if Defendant make the Subject Property ADA-complaint.

Defendant relies upon Strojnik v. Teof Hotel GP when attempting to undermine James Gumbert's intentions to return to the Subject Property. In Strojnik, the plaintiff alleged that he had been discriminated against by a hotel that was ***hundreds*** of miles from where he lived.[44] The complaint was dismissed in that case after the Court considered (1) Strojnik's proximity to the hotel; (2) his past patronage; (3) the definitiveness of his plan to return to the hotel; and (4) his frequency of nearby travel.[45] When applying that test to the case at bar, this Court should find that James Gumbert has adequately pled that he does in fact have a plausible intent to return to the property. James Gumbert has alleged he lives within thirty (30) miles of the Subject Property; he has patronized this property in the past before filing suit; he has clear and definite plans to return to the property; and he is frequently in the area of the Subject Property. At this point, these allegations must be taken as true.

Defendant also relies upon Lujan v. Defs. Of Wildlife, where the Court found that affidavits of members claiming an intent to revisit project sites at some indefinite future time does not

[42] Id.; See Allegation 13.
[43] See ECF Document 15 Motion to Dismiss, Page 7.
[44] Strojnik v. Teof Hotel GP, 2020 WL 5211063 (N.D. Tex. Aug. 31, 2020).
[45] Id.; at Page 6.

demonstrate an "imminent" injury.[46] This is easily distinguishable from James Gumbert who lives near the Subject Property, has patronized businesses at the Subject Property in the past, has clear and definite plans to return to the property, and is frequently in the area of the Subject Property.

Unsurprisingly, Defendant makes no mention of Kennedy v. Sai Ram Hotels LLC, which was quoted and distinguished by the Court in Strojnik.[47] In that case, the plaintiff sued a hotel chain for lacking requisite ADA compliant hotel accommodations.[48] Kennedy's complaint survived Defendant's motion to dismiss, because Kennedy alleged she frequently travels near the hotel, and she planned to return to the hotel and its website within eight months.[49]

### IV. The Laufer case is factually and legally inapplicable to the case at bar, because the injury suffered by James Gumbert in the case at bar is a concrete injury in fact.

James Gumbert has a personal, concrete interest in being able to visit and use the facilities at the Subject Property. It is noted that "the deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the deprivation.'"[50] Defendant unsuccessfully tries to argue that James Gumbert has no concrete interest affected by the deprivation of his right to use the public facilities at the Subject Property by comparing the facts here to the Laufer case.[51]

In the Laufer case, the plaintiff sued an inn for failure to identify rooms accessible to disabled persons in postings on third-party websites.[52] Much like the Strojnik case (and unlike the *Kennedy* case), the plaintiff in Laufer lived far away from the subject property – ***approximately***

[46] Lujan v. Defs of Wildlife, 504 U.S. 555, 560-561 (1992).
[47] See Strojnik v. Teof Hotel GP at 8, Quoting Kennedy v. Sai Ram Hotels LLC, No. , 2019 WL 2085011 (M.D. Fl. May 13, 2019)
[48] Kennedy v. Sai Ram Hotels LLC, No. , 2019 WL 2085011 (M.D. Fl. May 13, 2019), at 2.
[49] Id.
[50] Lee v. Verizon Commc'ns, Inc., 837 F.3d 523, 529 (5th Cir. 2016) (quoting Spokeo, 136 S. Ct. at 1549).
[51] Laufer v. Mann Hospitality, L. L.C., 996 F.3d 269 (5th Cir. 2021).
[52] Id.

***two thousand miles in the Laufer case.***[53] Notably, the plaintiff in Laufer ***never actually visited the inn*** itself or even attempted to book a room there.[54] In that case, the plaintiff only alleged that she could not tell from the inn's online reservation system whether it had ADA complaint rooms.[55] With only an information injury alleged, the Court noted that the ultimate problem in the plaintiff's case was her failure to show how the alleged violation affected her in a concrete way.[56] This is in stark contrast to the case at bar, as James Gumbert suffered an actual concrete injury in fact as defined by the ADA when he personally encountered the barriers to entry at the Subject Property.

In contrast to Laufer, here, James Gumbert has alleged ADA violations have negatively affected his concrete interest in utilizing the facilities and accommodations when he visited the Subject Property near his residence. Barriers at the property prevented him from exercising his rights granted under the ADA. James Gumbert fully intends on revisiting the Subject Property in the next six months to once again attempt to exercise those rights.[57] Still, he will not subject himself to unnecessary harm or injury by attempting to access the premises while the physical barriers remain present, nor is that required for James Gumbert to have standing in this matter as the injury in fact has already been suffered.

## CONCLUSION

James Gumbert has alleged a plausible set of facts to survive a motion to dismiss at this stage of litigation – he was a customer of a business at the Subject Property and has concrete plans to return within 6 months. This is not surprising because James Gumbert lives within thirty (30) miles of the Subject Property and travels in and about the immediate area of the Subject Property

---

[53] Id.; at 2.
[54] Id.; at 16.
[55] Id.; at 1.
[56] Id.; at 21.
[57] See ECF Document 13 Amended Complaint, Allegations 15 and 28.

numerous times every month, if not every week. James Gumbert has listed numerous specific, physical barriers he personally encountered when he actually visited the Subject Property and attempted to utilize the facilities, only to find them in violation of the ADA making it dangerous for James Gumbert to utilize the parking facility. This caused James Gumbert a concrete injury in fact that will continue to occur because of Defendant's failure to maintain the premises in compliance with ADA regulations and standards – a fact evidenced by Defendant's continued unwillingness to voluntarily make the rather low-cost repairs necessary to make the Subject Property ADA-complaint. Surely, someone who owns a property valued at $2,350.000 by the Travis County Central Appraisal can afford modifications to their parking lot.[58]

Defendant has never pled that the ADA violations at the Subject Property do not exist or pled that he has repaired them. However, Defendant's counsel has persisted in arguing outside the complaint, making personal attacks, and engaged in all manner of collateral attack. The reason is because the Defendant knows that the Subject Property has ADA violations, Defendant refuses to remedy them, and Defendant wants this Court to decide the matter on a technicality because Defendant is terrified of what will come out in discovery.

Lastly, using Defendant's logic, it is difficult to envision any instance in which a disabled individual who is affected by a non-compliant property can enforce his rights - this is clearly not the intent of the ADA. Put bluntly, if a disabled patron does not have the ability to sue a business he patronizes when the business is not in compliance with the ADA, what is the purpose of the Act?

[58] See https://stage.travis.prodigycad.com/property-detail/287611/2022

Accordingly, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint for the foregoing reasons.

Dated this 20th of October, 2022.

Respectfully submitted,

/s/ Duncan Strickland
Duncan Strickland
Counsel for Plaintiff
State Bar No.: 24072374
13423 Blanco Road, #936
San Antonio, TX 78216
Telephone: (210) 504-7874
Facsimile: (832) 218-4317
E-mail: Duncan@StricklandLawFirm.com

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via the Court's ECF system this 20th day of October, 2022.

/s/ Duncan Strickland

**EXHIBIT 1**

SUBWAY

Subway#14367-0 Phone 512-443-3337
1900 East Oltorf ST
Austin, TX, 78741
Served by: 0008 2/20/2022 4:01:28 pm
Term ID-Trans# 1/A-530693

| Qty | Size | Item | Price |
|---|---|---|---|
| 1 | | Bottled Water | 2.19 |
| 1 | | Bottled Carbonated Drink | 2.19 |

| | |
|---|---|
| Sub Total | 4.38 |
| Taxable Amount | 2.19 |
| General Sales Tax (8.25%) | 0.18 |
| Total (Eat In) | 4.56 |
| Credit Card | 4.56 |
| Change | 0.00 |

Call us with your Comments
Phone (512)-554-8061

Approval No: 020630
Reference No: 5wA2001645394484017
Card Issuer: Visa
Account No: ************6612
Acquired: ICC
Amount: $4.56
Application: VISA CREDIT
AID: A0000000031010
MID: 420429002267917
TID: 75296894
Date/Time: 02/20/2022 16:01:24
APPROVED

CUSTOMER COPY

Host Order ID: 6446453944866517

Lettuce know how we did today at global.subway.com and we'll send you a sweet offer.

re·ceipt powered by mobivity

SUBWAY®
EAT FRESH
REFRESH